**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LOUIS WATLEY, | : | |
| | : | Civil Action No. 10-3726 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NORMAN ROBERTSON, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro se</u>
Louis Watley
East Jersey State Prison
Lock Bag R
4 down 4-11
Rahway, NJ 07065

**WIGENTON**, District Judge

　　Plaintiff Louis Watley, a prisoner confined at East Jersey State Prison, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

　　At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, as well as other public records,[1] and are accepted as true for purposes of this review.

Plaintiff was convicted of first-degree aggravated sexual assault, second-degree kidnapping, third-degree terroristic threats, and fourth-degree sexual contact. He was sentenced to an aggregate term of eighteen years' imprisonment. See Watley v. Mee, Civil No. 09-4358, 2010 WL 3834671 (D.N.J. Sept. 24, 2010).

Plaintiff alleges that on May 31, 2007, the Adult Panel of the New Jersey State Parole Board advised him that he was required to submit to an in-depth psychological evaluation. Plaintiff alleges that many aspects of the evaluation were "redundant," as many of the questions were the same as those he had previously answered in connection with his pre-sentencing

---

[1] This Court will take judicial notice of the dockets of other courts in cases related to this Petition. See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

psychological evaluation.  Accordingly, Plaintiff refused to submit to the examination.

Plaintiff appeared before the Panel again on September 24, 2007, when Defendant Norman Robertson, a member of the Adult Panel, advised Plaintiff that no decision would be rendered until Plaintiff submitted to the psychological evaluation.  Thereafter, Plaintiff submitted to the examination.

Plaintiff alleges that the Panel convened a new telephonic hearing on January 28, 2008.  Plaintiff alleges that, at that hearing, Defendant Robertson argued with an unidentified person about Plaintiff's case, but that Plaintiff does not know the specifics of the conversation because Defendant Charles Jones, another member of the Adult Panel, advised him that the "mute" button had inadvertently been left on.  Defendant Robertson informed Plaintiff that a decision would be forwarded to him in a few weeks.  Instead, the psychological report was returned for additional information.  Plaintiff alleges that the report "was altered to reflect the conditions specified by Defendant Robertson."

Plaintiff alleges that the hearing was reconvened on April 24, 2008, at which time he was denied parole.  Plaintiff unsuccessfully appealed the denial of parole. See Watley v. New Jersey State Parole Board, 2010 WL 2471438 (N.J.Super. App.Div.

June 16, 2010).² He asserts that he was not supplied with either the transcripts of the hearings or the psychological report for use in the appeal. Plaintiff alleges that Defendant Ellen Hale, a Deputy Attorney General representing the Parole Board in the appellate proceeding, failed to comply with a court order to provide Plaintiff with copies of the transcripts of the various hearings.

In addition to the individuals mentioned above, Plaintiff also names as a Defendant Rebecca Manning, a Hearing Officer for the Parole Board, who was empowered to take preliminary evidence and testimony prior to a matter being sent to the Adult Panel.

Plaintiff seeks a declaratory judgment that the requirement that he submit to a psychological examination deprived him of due process in violation of the Fourteenth Amendment to the U.S. Constitution; that the refusal to disclose the report of the psychological examination, allegedly confidential under N.J.A.C. 10A:71-2.1,³ deprived him of due process in violation of the

---

² The Court notes that Plaintiff filed in this Court a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging a July 19, 2010, decision of the Parole Board to deny him parole. That petition was dismissed without prejudice for failure to exhaust administrative remedies. See Watley v. Plousis, Civil No. 10-5086, 2011 WL 2115797 (D.N.J. May 25, 2011).

³ New Jersey Administrative Code 10A:71-2.1 provides, in pertinent part:

(a) The following information, files, documents, reports, records or other written material submitted to, prepared and

    maintained by or in the custody of the Board, any Board member or employee pertaining to parole and parole supervision are deemed confidential:

        1. Reports which are evaluative, diagnostic or prognostic in nature, furnished with a legitimate expectation of confidentiality and which, if revealed to the inmate/parolee or others, could be detrimental to the inmate, adversely affect the inmate's rehabilitation or the future delivery of rehabilitative services, jeopardize the physical safety of individuals who signed the reports or were parties to the decisions, conclusions, or statements contained therein;

        ...

        7. Information, files, documents, reports, records or other written materials classified as confidential pursuant to the Department's, Commission's or another agency's rules, statutory provisions or judicial decisions;

        8. A transcript, if prepared, of any proceeding of the Board;

        9. Such other information, files, documents, reports, records or other written materials as the Board may deem confidential to insure the integrity of the parole and parole supervision processes; ... .

(b) All information, files, documents, reports, records or other written materials prepared and maintained by or in the custody of the Board, any Board member or employee pertaining to the administrative operations of the Board are deemed confidential.

(c) No information, files, documents, reports, records or other written material deemed confidential pertaining to inmates or parolees shall be reviewed by any person except a Board member or employee or individual or law enforcement agency authorized by the Board or by the Chairperson.

(d) Inmates or parolees shall be afforded disclosure of adverse material or information considered at a

Fourteenth Amendment to the U.S. Constitution; and that Defendant Hale's failure to provide the transcripts in connection with the appeal deprived Plaintiff of equal protection and due process in violation of the Fourteenth Amendment to the U.S. Constitution. Plaintiff seeks injunctive relief ordering the defendants to provide him a copy of the report of the psychological examination, to provide him with the transcripts of the various hearings, and to vacate the April 24, 2008, decision and remand the matter to the Board for further consideration.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United

---

      hearing, provided such material is not classified as
      confidential by the Board or the Department. If
      disclosure is withheld, the reason for nondisclosure
      shall be noted in the Board's files, and such material
      or information shall be identified as confidential.

States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in

8

which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances. ... If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

Rule 18(a) controls the joinder of claims. In general, "[a] party asserting a claim ... may join as independent or

10

alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>     (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added). See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all. If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial

economy. Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action. Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party. The court may also sever any claims against a party."

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State

> or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

### IV.  ANALYSIS

Plaintiff challenges the procedures by the Adult Panel and its counsel in deciding his eligibility for parole, in the

administrative proceeding and in the judicial appeal, specifically the requirement that he undergo a psychological evaluation, and the refusal to provide him with a copy of the report of that psychological evaluation or with transcripts of the various parole hearings.

There is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause. See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F.Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Because Plaintiff's underlying offenses were committed in April 1997, Plaintiff's parole eligibility is governed by the original provision of the Parole Act of 1979 (L. 1979, c. 441). In pertinent part, the governing version of N.J.S.A. 30:4-123.531, provides as follows:

> An adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report filed pursuant to section 10 of this act or developed or produced at a hearing held pursuant to section 11 of this act indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time. In reaching such determination, the board panel or board shall state on the record the reasons therefor.

See Watley v. New Jersey State Parole Board, 2008 WL 2511753, *3 (N.J.Super. App.Div. June 25, 2008).

14

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J. 192, 203 (1983).  Judge Lifland of this Court has held that these cases remain good law even after taking into account the rule announced by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See Watson v. DiSabato, 933 F.Supp. 390, 392-93 (D.N.J. 1996) (prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

The question remains what process is due.  The Supreme Court of New Jersey has stated that

> Only a few basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context.  We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have

15

>    not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons. No hearing, confrontation, or counsel issues are implicated here.

Byrne, 93 N.J. at 211. In addition, "a preponderance of the credible evidence in the record [must support] the Parole Board's determination that there is a substantial likelihood that [the prisoner] will commit a crime if he is released on parole." See Trantino v. New Jersey State Parole Board, 166 N.J. 113, 126 (2001), modified as to halfway house placement, 167 N.J. 619 (2001).

Similarly, Judge Thompson of this Court has held that due process does not require that a hearing be held in exact accordance with the time period specified by the applicable New Jersey statutes. See Burgos v. New Jersey State Parole Board, 2000 WL 33722126, *8 (D.N.J. Aug. 7, 2000). In addition, while delay for an extended period of time may violate a prisoner's due process rights, "procedural errors are generally cured by holding a new hearing in compliance with due process requirements." Id. at *8-9. See also Johnson v. Paparozzi, 219 F.Supp.2d 635, 642 (D.N.J. 2002).

This is not to say that every allegation of constitutional violations in parole proceedings is the proper subject for an action under § 1983. In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas

16

corpus statute, 28 U.S.C. § 2254. In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release. 411 U.S. at 476. The prisoners did not seek compensatory damages for the loss of their credits. 411 U.S. at 494. The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in Preiser, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding. Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

17

> question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted). The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted). The Court further held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." <u>Id.</u> at 489-90.

More recently, in <u>Wilkinson v. Dotson</u>, 544 U.S. 74 (2005), the Supreme Court applied these principles to hold that claims challenging the validity of general parole procedures are cognizable under § 1983, so long as the prisoner does not seek injunctive relief ordering his immediate or speedier release into

the community, but rather seeks merely a new eligibility review or parole hearing.

Thus, for example, when a dispute "goes only to the manner in which the Board has considered plaintiff's parole, and [when] plaintiff does not claim that the review process must actually lead to his parole or to an earlier parole eligibility date, plaintiff's claim may proceed under 42 U.S.C. § 1983." Johnson v. Fauver, 786 F.Supp. 442, 445 (D.N.J.) (emphasis added), aff'd, 970 F.2d 899 (3d Cir. 1992); see also Georgevich v. Strauss, 772 F.2d 1078, 1086 (3d Cir. 1985), cert. denied, 475 U.S. 1028 (1986) (suit properly brought under § 1983 when it sought only the equal application of statutory furlough eligibility criteria, not plaintiff's release from incarceration); Salaam v. Consovoy, No. 99-cv-5692, 2000 WL 33679670, *2 (D.N.J. April 14, 2000) (a claim properly may be brought as a § 1983 action when the plaintiff is neither seeking an earlier parole eligibility date, nor challenging the parole board's calculation of his eligibility date).

Here, Plaintiff's challenges to the procedures fall within the class of claims that may be brought in a § 2984 proceeding. However, the challenged procedures do not violate his right to due process in connection with parole consideration. Nothing in the challenged procedures interferes with Plaintiff's due process rights to notice of the proceeding, a statement of the reasons

19

for denial of parole, and an opportunity to respond.  Moreover, treatment of the psychological report and transcripts as confidential did not violate the state regulations regarding confidential parole-related documents.  Even if the treatment of such documents as confidential did violate applicable state regulations, which this Court does not concede, such error would not amount to a constitutional due process violation, as such regulations do not create liberty interests in prisoners, but merely act as a guide for the Parole Board.  Plaintiff has failed to state a claim for violation of his due process rights in connection with his parole proceedings.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  It does not appear that Plaintiff could cure the defects of his Complaint by amendment.

An appropriate order follows.

s/Susan D. Wigenton
Susan D. Wigenton
United States District Judge

Dated: October 6, 2011